**NOT YET SCHEDULED FOR ORAL ARGUMENT**

*In the*

# United States Court of Appeals

*for the*

# District of Columbia Circuit

17-7051

SPANSKI ENTERPRISES, INC.,

*Plaintiff-Appellee,*

– v. –

TELEWIZJA POLSKA, S.A.,

*Defendant-Appellant.*

*On Appeal from the United States District Court for the District of Columbia in Case No. 12-cv-957-TSC, Tanya S. Chutkan, Judge*

## BRIEF FOR DEFENDANT-APPELLANT

MARY E. GATELY
DLA PIPER US LLP
*Attorneys for Defendant-Appellant*
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4000

**CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES**

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Circuit Rule 28.1(a)(1), the undersigned counsel for Appellants in the above-captioned matter submits this Certificate of Parties, Rulings and Related Cases.

(A) **Parties and Amici**

Plaintiff in the court below and appellee in this Court is Spanski Enterprises, Inc. ("SEI"). Defendant in the court below and appellant in this Court is Telewizja Polska S.A. ("TVP"). TVP is wholly-owned by the State Treasury of the Government of Poland. It has no parent company and no publicly owned corporation owns 10% or more of its stock.

There are no amici in this appeal.

(B) **Rulings under Review**

Appellant seeks review of the following District Court Orders and Judgments:

(1)   The District Court's denial of Appellant's Motion for Summary Judgment, which was made on the record at the hearing of July 9, 2015, the transcript of which is reproduced in the Appendix ("A") at A112-19.

(2)    The District Court's Amended Memorandum Opinion Setting Forth Findings of Fact and Conclusions of Law (ECF No. 80), filed December 12, 2016, which is reproduced at A1122-1143 and reported at *Spanski Enters., Inc. v. Telewizja Polska S.A.*, 222 F. Supp. 3d 95 (D.D.C. 2016).

(3)    The District Court's Memorandum Opinion on Damages (ECF No. 85), filed February 14, 2017, which is reproduced at A1253-56 and reported at *Spanski Enters., Inc. v. Telewizja Polska S.A.*, No. 12-cv-957 (TSC), 2017 WL 598465 (D.D.C., Feb. 14, 2017).

(4)    The District Court's Order entering judgment for Plaintiff (ECF No. 86), which is reproduced at A1257.

(5)    **Related Cases.**  The case on review has not been previously before this Court or any other court.  To the best of counsel's knowledge, no other related cases currently are pending in this Court or in any other federal court of appeals, nor in any other court in the District of Columbia.

/s/ Mary E. Gately
Mary E. Gately

*Counsel for Appellant*

**TABLE OF CONTENTS**

**Page**

JURISDICTIONAL STATEMENT ..................................................................1

ISSUES PRESENTED FOR REVIEW ..........................................................1

PERTINENT STATUTES..............................................................................2

INTRODUCTION ..........................................................................................2

STATEMENT OF THE CASE AND THE FACTS........................................4

    I.      THE PARTIES .......................................................................4

    II.     TVP'S BUSINESS AND VIDEO DISTRIBUTION SYSTEM..........4

          A.     How an Internet User Streamed Programming from the VOD System ........................................................................5

          B.     The Infrastructure of the VOD System.....................................6

               1.     The Workflow System......................................................6

               2.     The Content Management System....................................8

               3.     The Portal Engine ..........................................................10

               4.     The Content Delivery Network .....................................11

          C.     TVP's Geo-Blocking System...................................................11

               1.     Geo-blocking Systems Generally ..................................11

               2.     The Operation of TVP's Geo-Blocking System...........11

    III.    TVP'S AND SEI'S AGREEMENTS AND PRIOR LITIGATIONS...................................................................................13

          A.     The Agreements ......................................................................13

          B.     The Prior Litigations between the Parties................................13

PROCEDURAL HISTORY OF THIS CASE ...............................................16

    I.      SEI'S ACTION FOR COPYRIGHT INFRINGEMENT .................16

    II.     PROCEEDINGS IN THE DISTRICT COURT................................16

          A.     Pretrial Proceedings ...............................................................16

          B.     The District Court's Findings of Fact and Conclusions of Law...........................................................................................17

          C.     The District Court's Award of Damages .................................20

**TABLE OF CONTENTS**
(continued)

Page

SUMMARY OF ARGUMENT ............................................................21

STANDARD OF REVIEW ................................................................22

ARGUMENT ....................................................................................23

I.    THE DISTRICT COURT ERRED IN HOLDING THAT
TVP'S CONDUCT WAS COPYRIGHT INFRINGEMENT ..........23

    A.    TVP's Conduct Was Not Volitional .......................................24

    B.    Under *Sony* and *Grokster*, TVP's Conduct Is Not
Infringement .........................................................................28

II.    BECAUSE TVP'S ALLEGEDLY INFRINGING ACTS
OCCURRED OUTSIDE OF THE UNITED STATES, SEI
FAILED TO STATE A CLAIM FOR COPYRIGHT
INFRINGEMENT ...........................................................................32

    A.    The Copyright Act Does Not Apply To Extraterritorial
Infringement .........................................................................32

    B.    The TVP Conduct Found By The District Court To Be
Infringing Occurred Entirely Outside of the United States .....33

III.    THE DISTRICT COURT'S DAMAGES DETERMINATION
WAS AN ABUSE OF DISCRETION ..............................................39

    A.    The District Court's Finding that TVP Committed
Willful Infringement was Error. ............................................40

    B.    The District Court Erred in Finding That 15 of the 51
Episodes were Infringed. ......................................................44

    C.    The Court Should Remand With Instructions to Consider
SEI's Failure to Mitigate Damages and the Absence of
Any Actual Harm to SEI or Profit to TVP..............................49

        1.    Mitigation of Damages ..................................................49

        2.    Relationship Between Actual Damages and
Statutory Damages ........................................................51

CONCLUSION ..................................................................................54

# TABLE OF AUTHORITIES

**Page**

CASES

*A.C. Aukerman Co. v. R. L. Chaides Constr. Co.*,
 960 F.2d 1020 (Fed. Cir. 1992) ..........................................................................23

*Adenariwo v. Fed. Mar. Comm'n*,
 808 F.3d 74 (D.C. Cir. 2015)...............................................................................49

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
 134 S. Ct. 2498 (2014)........................................................................................34

*Armstrong v. Geithner*,
 608 F.3d 854 (D.C. Cir. 2010)............................................................................22

*Automattic Inc. v. Steiner*,
 82 F. Supp. 3d 1011 (N.D. Cal. 2015).......................................................37, 38, 39

*Broad. Music, Inc. v. Airhead Corp.*,
 No. 3:90CV00431, 1990 WL 1239531 (E.D. Va. Dec. 27, 1990) ....................48

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
 536 F.3d 121 (2d Cir. 2008) ...............................................................................25

*CoStar Grp., Inc. v. LoopNet, Inc.*,
 373 F.3d 544 (4th Cir. 2004) ........................................................................24, 25

*Douglas v. Cunningham*,
 294 U.S. 207 (1935)............................................................................................52

*Fox Broad. Co. v. Dish Network LLC*,
 160 F. Supp. 3d 1139 (C.D. Cal. 2015)....................................................25, 26, 36

*Fox Broad. Co. v. Dish Network LLC*,
 723 F.3d 1067 (9th Cir. 2013) ............................................................................25

*Harrison Music Corp. v. Tesfaye*,
 293 F. Supp. 2d 80 (D.D.C. 2003).......................................................................42

*Kirtsaeng v. John Wiley & Sons, Inc.*,
 133 S. Ct. 1351 (2013)........................................................................................32

# TABLE OF AUTHORITIES
(continued)

**Page**

*Lame v. United States Dep't of Justice*,
    767 F.2d 66 (3d Cir. 1985) ...............................................................45

*Lifted Research Grp., Inc. v. Behdad*,
    No. 08-390 (CKK), 2010 WL 2662277 (D.D.C. June 30, 2010) ................51, 52

*Litecubes, LLC v. N. Light Prods., Inc.*,
    523 F.3d 1353 (Fed. Cir. 2008) ......................................................33

*Lockheed Martin Corp. v. United States*,
    833 F.3d 225 (D.C. Cir. 2016)..........................................................23

*Luar Music Corp. v. Universal Music Grp., Inc.*,
    861 F. Supp. 2d 30 (D.P.R. 2012) ....................................................33

*Malibu Media, LLC v. Doe*,
    No. 13-cv-135-RLM-JEM, 2014 WL 1031336 (N.D. Ind. Mar. 17, 2014) .......50

*Malibu Media, LLC v. Guastaferro*,
    No. 14-cv-1544, 2015 WL 4603065 (E.D. Va. July 28, 2015) .........................50

*Malibu Media, LLC v. Julien*,
    No. 12-cv-01730-TWP-MJD, 2013 WL 5274262 (S.D. Ind. Sept. 17,
    2013) ...............................................................................................50

*McKesson Corp. v. Islamic Republic of Iran*,
    672 F.3d 1066 (D.C. Cir. 2012)........................................................23

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)...........................................................28, 29, 30, 31

*Microsoft Corp. v. Ricketts*,
    No. C 0606712, 2007 WL 1520965 (N.D. Cal. May 24, 2007) .........................52

*Mob Music Publ'g v. Zanzibar on the Waterfront, LLC*,
    698 F. Supp. 2d 197 (D.D.C. 2010)...................................................48

*Nat'l Cable Television Ass'n, Inc. v. Broad. Music, Inc.*,
    772 F. Supp. 614 (D.D.C. 1991)...................................................41, 42

iv

# TABLE OF AUTHORITIES
(continued)

**Page**

*Overby v. Nat'l Ass'n of Letter Carriers*,
  595 F.3d 1290 (D.C. Cir. 2010) .........................................................23

*Parker v. Google, Inc.*,
  242 F. App'x 833 (3d Cir. 2007) ........................................................25

*Peer Int'l Corp. v. Luna Records, Inc.*,
  887 F. Supp. 560 (S.D.N.Y. 1995) .....................................................52

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) .............................................................25

*Quinto v. Legal Times of Wash., Inc.*,
  511 F. Supp. 579 (D.D.C. 1981) ........................................................52

*Range Roads Music, Inc. v. E. Coast Foods, Inc.*,
  668 F.3d 1148 (9th Cir. 2012) ...........................................................48

*Robert Stigwood Grp. Ltd. v. O'Reilly*,
  530 F.2d 1096 (2d Cir. 1976) ............................................................32

*Rundquist v. Vapiano SE*,
  798 F. Supp. 2d 102 (D.D.C. 2011) .............................................32, 33

*Sony BMG Music Entm't v. Tenenbaum*,
  660 F.3d 487 (1st Cir. 2011) ........................................................41, 52

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ...............................................................24, 28, 29

*Spanski Enters., Inc. v. Telewizja Polska S.A.*,
  No. 10 Civ. 4933 (ALC)(GWG), Final Order, ECF No. 67 (S.D.N.Y.
  Mar. 6, 2014) ....................................................................................15

*Spanski Enters., Inc. v. Telewizja Polska S.A.*,
  604 F. App'x 33 (2d Cir. 2015) ...................................................15, 53

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
  24 F.3d 1088 (9th Cir. 1994) .......................................................32, 33

# TABLE OF AUTHORITIES
(continued)

**Page**

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*,
  925 F.2d 566 (2d Cir. 1991) ...............................................................45

*Triple Up Ltd. v. Youku Tudou Inc.*,
  No. 16-159, 2017 WL 354093 (D.D.C. Jan. 24, 2017) ......................37

*United Dictionary Co. v. G. & C. Merriam Co.*,
  208 U.S. 260 (1908).............................................................................32

*Update Art, Inc.* v. *Modiin Publ'g, Ltd.*,
  843 F.2d 67 (2d Cir. 1988) ..................................................................32

*Walt Disney Co. v. Powell*,
  698 F. Supp. 10 (D.D.C. 1988) ............................................................42

*Walt Disney Co. v. Powell*,
  897 F.2d 565 (D.C. Cir. 1990) ..............................................39, 40, 42

*Warner Bros. v. Dae Rim Trading, Inc.*,
  877 F.2d 1120 (2d Cir. 1989) ..............................................................54

*Wondie v. Mekuria*,
  742 F. Supp. 2d 118 (D.D.C. 2010)......................................................42

*Zomba Enters., Inc. v. Panorama Records, Inc.*,
  491 F.3d 574 (6th Cir. 2007) ...............................................................41

**STATUTES**

17 U.S.C. § 101 .........................................................................................35

17 U.S.C. § 106 .........................................................................................25

17 U.S.C. § 106(4) .....................................................................................34

17 U.S.C. § 501 .........................................................................................25

17 U.S.C. § 504(b) .....................................................................................40

17 U.S.C. § 504(c)(1).............................................................................40, 44

# TABLE OF AUTHORITIES
(continued)

**Page**

17 U.S.C. § 504(c)(2)...................................................................................40

17 U.S.C. § 512...........................................................................................38

17 U.S.C. § 512(f)..................................................................................38, 39

28 U.S.C. § 1291...........................................................................................1

28 U.S.C. § 1330...........................................................................................1

28 U.S.C. § 1338(a)........................................................................................1

28 U.S.C. § 1603(a)-(b)...................................................................................1

28 U.S.C. § 1605(a).......................................................................................1

OTHER AUTHORITIES

5 M. and D. Nimmer, Nimmer on Copyright § 14.04[B][3][a]...............................41

Central Intelligence Agency, *The World Factbook, Poland*,
    *https://www.cia.gov/library/publications/the-world-factbook/geos/pl.html*
    (last accessed 8/5/2017) ........................................................................29

Fed. R. Civ. P. 52(a)...................................................................................44

H.R. Rep. No. 94-1476 (1976)....................................................................35, 36

U.S. Census Bureau, *Language Use in the U.S.: 2011*,
    *https://www.census.gov/prod/2013pubs/acs-22.pdf*, at 3
    (last accessed 8/5/2017) ........................................................................29

# GLOSSARY

| | |
|---|---|
| CMS: | Content Management System |
| CDN: | Content Delivery Network |
| IP: | Internet Protocol |
| PPV: | Pay-per-view |
| SEI: | Spanski Enterprises, Inc. |
| Territory: | North and South America (including possessions) |
| TVP: | Telewizja Polska S.A. |
| VOD: | Video-on-Demand |
| Website: | www.tvp.pl |

51 Episodes: *Galeria* episodes 4 – 25, *Gleboka woda* episode 13, *M jak Milosc* episodes 884 – 895, *Plebania* episodes 1825 – 1829, and *Rezydencja* episodes 48 – 58.

15 Episodes: *Galeria*, episodes 15-25, *M jak Milosc*, episode 895, and *Rezydencja*, episodes 57-58.

**OPENING BRIEF FOR APPELLANT**

**JURISDICTIONAL STATEMENT**

TVP appeals from (1) the denial from the bench by the United States District Court for the District of Columbia (Tanya S. Chutkan, U.S.D.J.) (the "District Court") of TVP's Motion for Summary Judgment (A112-119); (2) the District Court's Amended Memorandum Opinion Setting Forth Findings of Fact and Conclusions of Law (A1122-1143); (3) the District Court's Memorandum Opinion on Damages (A1253-1256) and (4) the District Court's Order entering judgment for Plaintiff SEI. (A1257).

The District Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330, 1338(a), 1603(a)-(b) and 1605(a).  The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  Judgment was entered in the District Court on February 14, 2017, and notice of appeal was timely filed by Appellant in the District Court on March 15, 2017.  This appeal is from a final order or judgment that disposes of all parties' claims.

**ISSUES PRESENTED FOR REVIEW**

1. Whether the District Court erred as a matter of law in holding that TVP's uploading of non-geo-blocked content to its automated video-on-demand system located in Poland was direct copyright infringement under U.S. law.

1

2.  Whether the District Court erred as a matter of law in holding that SEI's

    U.S. copyright infringement claim, based on TVP's uploading in Poland of

    non-geo-blocked content to its automated video-on-demand system located

    in Poland, was not barred by the extraterritoriality doctrine.

3.  Whether the district court erred in holding that TVP committed willful

    infringement.

4.  Whether the District Court erred in holding that SEI proved infringement by

    TVP of copyright in 15 specific episodes of TVP Polonia content that SEI's

    attorneys did not record in the United States.

## PERTINENT STATUTES

The statutes pertinent to this appeal are set forth in an Addendum bound

with this Brief.

## INTRODUCTION

TVP, Poland's national television network, creates and owns copyright in

hundreds of Polish-language programs such as dramas and soap operas, and

operates 12 television channels, including one called TVP Polonia.  It delivers

these programs to viewers traditionally (by over-the-air and cable means).  More

recently, it has also made these programs available to Internet users by uploading

video files to its automated video-on-demand (VOD) system in Poland, which

users can access through TVP's website.  TVP has granted SEI an exclusive

2

license to carry TVP Polonia programs in North and South America.  As part of its

agreement with SEI, TVP contractually agreed to "geo-block" this content – that

is, configure its system so that Internet access requests from users in North and

South America for the content would be denied.

This lawsuit arises from SEI's contention that (a) TVP "turned off" geo-

blocking for TVP Polonia programs for a four-month period, and (b) consequently,

SEI's own law firm was able to access the TVP website and stream 51 of the TVP-

owned episodes to their computers in the U.S.  But instead of suing TVP for a

breach of its contractual obligation to geo-block, SEI registered the 51 episodes for

U.S. copyright and then sued for copyright infringement.  The District Court

accepted this theory of copyright infringement, concluded after a bench trial that

TVP had willfully infringed SEI's U.S. exclusive right of public performance, and

awarded SEI $3,060,000 – $60,000 for each of the 51 episodes – in statutory

damages.

This judgment and award is erroneous in all respects and should be reversed

by this Court.  The liability determination below was error because there was no

proof that TVP's acts in Poland infringed an exclusive right under U.S. copyright

law.  If there were any infringers here, they were employees of SEI's own law

firm, who deliberately caused the Polish VOD system to stream content to their

computers in the United States.  Moreover, all of TVP's acts took place in Poland,

3

and the law is clear that such extraterritorial conduct does not permit a copyright infringement suit in the United States.  The District Court's damages ruling was likewise reversible error.  There was no proof that TVP knew it was infringing SEI's U.S. copyrights by uploading TVP's own content in Poland to its own VOD system in Poland.  Such knowledge is a *sine qua non* for a finding of willful copyright infringement and any award of enhanced statutory damages.  Finally, for 15 of the 51 episodes, there was no evidence that anyone in the U.S. ever streamed those programs from TVP's VOD system, and this failure of proof precludes any finding of infringement or award of damages as to those episodes.

## STATEMENT OF THE CASE AND THE FACTS

### I.     THE PARTIES

TVP is Poland's national public television broadcasting company, and is owned by the State Treasury of Poland.  (A137 ¶ 3; A561-62/280:21-281:7.)  SEI is a Canadian company that distributes Polish-language television and radio content to Polish speakers in North and South America via satellite and cable television and over the Internet.  (A137 ¶ 1.)

### II.    TVP'S BUSINESS AND VIDEO DISTRIBUTION SYSTEM

TVP owns and operates twelve Polish-language television channels that it distributes in Poland via cable and satellite, including a channel called TVP Polonia, formerly known as TV Polonia ("TVP Polonia").  TVP also produces and

owns worldwide copyrights in thousands of Polish-language video programs that are distributed on its channels, including dramas and soap operas. (A563/282:5-10; A564/283:4-11; A1263 § 2.) During the period relevant to this appeal, all of TVP's engineering personnel, including those responsible for its distribution of video content, were located solely in Poland. (A847-49/566:13-568:1.) During that period, TVP made thousands of programs, including those that had aired or were about to air on TVP Polonia, available through its automatic video-on-demand ("VOD") system. The equipment for the VOD system, including computer servers to which video content was uploaded and stored, was located exclusively in Poland. (A847-49/566:13-568:1.)

## A. How an Internet User Streamed Programming from the VOD System

During the relevant period, Internet users who were not geo-blocked could access TVP's VOD system by pointing their Internet browser software to TVP's website [www.tvp.pl](www.tvp.pl) (the "Website"), which was owned, maintained and updated by TVP personnel in Poland and hosted on TVP's computers in Poland. (A564-65/283:22-284:11.) Once on the Website, the user could access a menu which had a section for each program available on the VOD system. These included, but were not limited to, programs that were broadcast by TVP on TVP Polonia. The user could then click through to the section for a particular program, and select a

particular program by clicking on its link. By doing so, the user would direct the VOD system to provide a stream that would be decoded by the user's software and could be viewed on his/her computer or other device. (A565/284:3-11.) In general, a user could access programs that had already been broadcast on one of the TVP networks without payment, while the present week's episode of a series that had not yet been broadcast by TVP was typically available on a pay-per-view basis. (A137 ¶ 4; A565/284:3-23; A586/305:1-24.)

## B.     The Infrastructure of the VOD System

The administration of TVP's website and online video distribution system occurred entirely in Poland, where TVP's offices and TVP's Online Distribution Infrastructure were located. There were four main components to TVP's Online Distribution Infrastructure: the Workflow System; the Content Management System ("CMS"); the Web Portal Engine ("Portal Engine"); and the Content Delivery Network ("CDN"). (A2673-74.)

### 1.     The Workflow System

In the Workflow System, TVP engineers received video content (usually a series episode) from the TVP production department on a tape or disk, and converted the content into a digital file. The file was created in a video format that, upon streaming, could be viewed by computers and other devices that access the Internet. Because different devices use different formats, and because over

6

time new formats have been developed to increase definition on the viewer's device, TVP could create two or more files for a single program episode, each having a different format.  (A2673-74.)

During the relevant period, the creation and modification of formats in the Workflow System was automatically logged.  (A599/318:12-19.)  Accordingly, TVP was able to direct its system to print out a log showing all formats added, changed, or withdrawn for a particular episode of a TVP Polonia series. (A597/316:18-23; A599/318:12-19.)  After TVP became aware of SEI's claims of infringement, TVP's head of video technology, Jacek Terlicki, acting upon instructions of his superiors, directed a subordinate to create a log for the 51 episodes of TVP Polonia content alleged by SEI to have been infringed (the "51 Episodes").[1]  This log, which was created in August 2012 (that is, well after commencement of this litigation) was intended to show all additions, modifications, and withdrawals of formats in the Workflow System for each of the 51 Episodes.  (A2427-598; A2641-668; A3005-404; A599/318:12-19; A621-31/340:5–350:4.)  However, the log was limited to formats for the 51 Episodes and

---

[1]     The 51 Episodes, as alleged in SEI's complaint, are: *Galeria* episodes 4 – 25, *Gleboka woda* episode 13, *M jak Milosc* episodes 884 – 895, *Plebania* episodes 1825 – 1829, and *Rezydencja* episodes 48 – 58.  (A28-29 ¶¶ 12, 15; A34-35.)

did not show changes to formats for the thousands of other content programs

managed by the Workflow System.  (A2641-668; A630-31/349:10–350:17.)

### 2.    The Content Management System

The CMS System was operated by program editors of TVP in Poland.

(A847-48/566:13-567:9.)  For each episode of a program, a program editor would

input information about the episode, including a plot summary.  (A569/288:11-15;

A875-76/594:25-595:6.)  The editor also created a "digitization card" for each

episode, which is a screen with a set of instructions for the operators of the

Workflow System (it is not a physical card).  (A569/288:16-21.)  The digitization

card included any territorial restriction that would be applicable to the episode.

(A569-70/288:3–289:6.)

Each computer and other device that is capable of connecting to the World

Wide Web has a unique Internet Protocol ("IP") address that permits packets of

data sent from another location to be received and reassembled by the device into

images, sounds, or files.  (A587/306:6-14; A594-95/313:23-314:1; A839-

40/558:17-559:9.)  When the CMS system was first made operational in 2011,

TVP established a default territorial restriction of "Minus Ameryki" ("Minus

America" in English).  (A569:1-10; A580/299:7-23.)  This restriction instructed

the VOD system to block access to Internet user requests for video content, where

the request showed an IP address which can be associated with a North or South

American location.  (A580/299:2-23; A795/514:1-3.)  *See* discussion of geo-blocking, *infra* at II.C.  In order to enter a territorial restriction for an episode other than "Minus America," the program editor would have had to navigate a drop-down menu and choose a different restriction option.  (A795/514:10-21.)  The available options at the relevant time were "EBU" (European Broadcasting Union), "Poland" (restriction to Polish territory only) or "Worldwide" (no territorial restrictions).  (A580-81/299:12–300:4; A795/514:10-21.)  TVP also relied on the CMS system to geo-block for programs in which TVP had limited territorial rights, e.g., the Olympics.  (A578/297:5-8.)

To change any file with "Minus America" settings in the CMS System to make them available in America, an editor would have to search for the file, open it, change the territorial entry, and save the changed file.  This would have taken 5-6 minutes per file and perhaps two weeks for all of the restricted files.  (A636/355:1-10.)  No such activity came to the attention of TVP management.  (A636/355:15-25, A637/356:1-14.)

Although the CMS system logged entries made by program editors in Poland, prior to this litigation any logged information was overwritten after one month to save on archiving space.  (A597/316:4-25.)  Because SEI concealed its claims of infringement from SEI until it served its complaint in this case, TVP's CMS system automatically overwrote the CMS logs for the December 2011

9

through March 2012 period. (*Id.*) As a result, such logs were not available to TVP to aid in its defense of SEI's claims. (A596/315:10-25; A597-98/316:14–317:17; A781-82/500:6–501:14; A794/513:3-16.)

3.    The Portal Engine

The Portal Engine used information entered into the CMS system to create an Internet page with HTML coding that could be read by a user's Internet web browser. (A573-74/292:19–293:20.) It generated all graphics and texts of screens seen by the user when accessing the Website, except for video content itself. (A574-75/293:21-294:5.) It also provided an interface for the user to log in, to review available VOD episodes, and to make payment for an episode that is only offered on a PPV basis. (A573-74/292:19-293:20.) The Portal Engine logged IP addresses of users who made requests for video content and whether a specific request for access to video content was geo-blocked. (A2392-412; A2413-26; A593-95/312:19–314:24.) Prior to this litigation, these logs were retained for 14 days after creation and were then automatically overwritten to save on archiving space. (A3592/11:1-13; A593/312:5-18.) Because SEI concealed its claims of infringement from TVP until June 2012, the Portal Engine logs for the December 2011 through March 2012 period were automatically overwritten and unavailable to TVP for its defense in this case. (A596/315:10-25; A781-2/500:6–501:14; A794/513:17-25.)

10

### 4.    The Content Delivery Network

The CDN delivered video content to the user who requested such content unless the access request was denied by geo-blocking.  It generated the video content that would be seen in the viewer screen on the user's computer, if not geo-blocked.  (A574-75/293:21-294:1; A586/305:1-24.)

### C.    TVP's Geo-Blocking System

### 1.    Geo-blocking Systems Generally

Geo-blocking is a form of access control to the content of a network, based on the geographic location of the Internet user.  A geo-blocking system functions by comparing the IP address of a user requesting content with an external database, created by a third party, that associates IP addresses with a specific geographic location.  TVP used the MaxMind geo-location database.  (A883/602:2-10.)  If a particular episode or program is blocked for a location associated with the user's IP number, access to the content is denied; otherwise, access is permitted.  (A576-77/295:21–296:4; A883/602:2-10.)  Geo-blocking is an automated process that does not involve a human operator.  (A361-62/80:13-81:9.)

### 2.    The Operation of TVP's Geo-Blocking System

A geo-blocking capability was built into the TVP VOD system. (A576/295:12-20; A577-78/296:5–297:2.)  In 2007, TVP activated geo-blocking to North and South America (the "Territory") for all content on its VOD system, as

the result of an agreement between TVP and SEI.  (A578/297:3-17.)  From 2007

forward, TVP applied geo-blocking for the Territory in both the CMS System and

Workflow System.  (A580/299:2-6.)  First, at the CMS level, the system applied a

default territorial restriction of "Minus America" to all programming, which

blocked delivery of content to requesting IP addresses associated with the

Territory.  (A580/299:7-23; A581/300:20-23.)  Second, any territorial restriction

already entered for an episode in the CMS system would be communicated to

TVP's engineers operating the Workflow System through the "digitization card"

generated by the CMS System.  The video format created at the CMS System

level, including any territorial restriction, would be transmitted in "read only" form

to the Workflow System, so that "Minus America" restrictions from the CMS

System could not be altered in the Workflow System.  (A569-70/288:11–289:6;

A572/292:11-16.)

Because "Minus America" is set as a default for all programs entered in the

CMS System, access to any TVP Polonia program should have been blocked to

North and South America geo-located IP addresses, even if TVP employees failed

to enter a territorial restriction when adding a format to the Workflow System or if

they removed such a restriction.  (A625/344:2-14; A883-84/602:20–603:9;

A885/604:4-16; A2674-75.)  A user request should have been checked for geo-

blocking twice: first, by the Portal Engine (A586/305:1-17), and again by the CDS

System.  (A586/305:20-24).  If the geo-location of the IP address was consistent

with the Portal Engine's inquiry results, the video content would then be released

to the user.  (*Id*.)  If the user's IP address was geo-located within the Territory, the

content would be blocked.  (A587/306:2-14.)  The user would still see the text and

graphics on the TVP Webpage that is generated by the Portal Engine, but the video

viewer would not display content.  (A587/306:15-18.)

## III.   TVP'S AND SEI'S AGREEMENTS AND PRIOR LITIGATIONS

### A.     The Agreements

TVP and SEI initially entered into a December 14, 1994 Agreement

whereby TVP granted SEI the exclusive right, for twenty-five years, to broadcast,

on a "one-off" use basis, content from TVP Polonia in the Territory.  (A1263-64

§ 2.)  By contractual addendum dated November 4, 1999, TVP granted SEI the

further exclusive right to distribute, broadcast and display TVP Polonia content

over the Internet within the Territory.  (A1268 § 1.2 (amending § 2.3 of the

Agreement).)  Neither the Agreement nor the contractual addendum granted SEI a

U.S. copyright in the video content or obligated TVP to geo-block the content

licensed to SEI for the Territory.  (*See* A1263-73.)

### B.     The Prior Litigations between the Parties

In 2006, TVP commenced a Polish arbitration, seeking a ruling that SEI had

the right to only make a single use of TVP Polonia programming, and that TVP

13

was entitled to license other uses of that programming within the United States. (A1274-99.)  In February 2007, SEI sued TVP in New York federal court seeking to enjoin TVP from participating in the Polish arbitration.  (A1307-08 ¶¶ 28-35.) Its complaint sought a declaratory judgment that the Agreement prohibited TVP from granting licenses to other companies to retransmit the content of, *inter alia*, TVP Polonia, and asserted that TVP had breached the Agreement.  (A1308-09 ¶¶ 36-40.)  The complaint also alleged, without specifics, that TVP had engaged in copyright infringement by broadcasting content contractually licensed to SEI "via its internet sites."  (A1310 ¶ 51.)

In April 2007, TVP filed an Amended Answer and Counterclaims, denying, *inter alia*, SEI's claim of copyright infringement.  (A1322 ¶ 51.)  This copyright claim was never adjudicated.  Instead, on August 11, 2009, TVP and SEI entered into a Settlement Agreement, which provided for dismissal with prejudice of all claims in SEI's U.S. litigation (the "Settlement Agreement").  (A1342 § I(B).)

The Settlement Agreement contained no admission by TVP that it had infringed any copyright claimed by SEI.  (*Id.*)  The only statement relating to geo-blocking in the Settlement Agreement was the following: "The parties shall maintain and continue all Internet geo-blocking which is currently in effect, and shall use their best efforts to conform their respective future geo-blocking efforts to

the latest widely disseminated and financially practicable geo-blocking technologies."  (A1344 § II(K).)

SEI commenced a second New York federal litigation against TVP in June 2010.  (A1346-55.)  Its Amended Complaint alleged that TVP had breached the Agreement and Settlement Agreement by licensing certain programs carried on TVP Polonia to a competitor of SEI called Polvision, for distribution in the Territory.  (*Id.* ¶¶ 16-23.)  SEI did not assert any claim for copyright infringement in the Second SDNY Litigation.  (*Id.*)  SEI's claims in this litigation were decided by an opinion and judgment of the United States District Court for the Southern District of New York (*Spanski Enters., Inc. v. Telewizja Polska S.A.*, No. 10 Civ. 4933 (ALC)(GWG), Final Order, ECF No. 67 (S.D.N.Y. Mar. 6, 2014), which was affirmed by a summary order of the United States Court of Appeals for the Second Circuit (*Spanski Enters., Inc. v. Telewizja Polska S.A.*, 604 F. App'x 33 (2d Cir. 2015)) ("Second Circuit Order").  The Second Circuit Order affirmed the district court's finding that SEI's rights in TVP Polonia content were not limited to one-time use, and that TVP's license to Polvision breached the Agreement and Settlement Agreement.  (*Id.* at 36-37.)  The Second Circuit Order also affirmed the contract damages awarded by the district court to SEI and the market value determined by the district court: $600 per TVP Polonia episode licensed by TVP to Polvision.  (*Id.* at 37-38.)

15

## PROCEDURAL HISTORY OF THIS CASE

## I.      SEI'S ACTION FOR COPYRIGHT INFRINGEMENT

On June 11, 2012, SEI commenced the current action against TVP in the United States District Court for the District of Columbia.  (A25-35.)  The Complaint alleged that TVP had violated SEI's exclusive distribution right in TVP Polonia content, because "some time in 2010 or 2011, TVP turned off the geo-blocking feature [of its VOD system] and thereby intentionally made available to viewers in the United States thousands of episodes of shows to which SEI had the exclusive distribution rights in the United States…including but not limited to 51 Episodes of the Serial Shows…prior to the Episodes' scheduled appearance on *TVP Polonia*."  (A28-29 ¶ 15.)  However, SEI sued only for infringement of copyright in the 51 Episodes, which it alleged it had pre-registered with the U.S. Copyright Office.  (A29 ¶ 17.)  However, TVP did not become aware of SEI's pre-registration of episodes of TVP Polonia programs until after the complaint in this action was filed on June 11, 2012.  (A796-97/515:20-516:16.)

## II.     PROCEEDINGS IN THE DISTRICT COURT

### A.      Pretrial Proceedings

TVP moved for summary judgment that it did not infringe SEI's copyrights.  (A10 at ECF No. 24.)  Among the grounds raised for dismissal of the complaint was that all of TVP's acts that SEI claimed were infringement occurred in Poland,

16

not the United States, and thus TVP's actions in Poland could not be copyright infringement under U.S. copyright law. On July 9, 2015, the District Court issued a ruling during oral argument, holding that TVP's alleged infringing conduct was not extraterritorial and was therefore within the scope of U.S. copyright law. (A114/74:2-12.) The Court denied the summary judgment motions of both parties. (A11 at ECF No. 31.)

### B.     The District Court's Findings of Fact and Conclusions of Law

Following a five-day bench trial from February 22, 2016 through February 26, 2016, the District Court issued an Amended Memorandum Opinion Setting Forth Findings of Fact and Conclusions of Law. (A1121-43.) The District Court found the following relevant facts:

(a)     SEI was the exclusive licensee and owner of valid U.S. copyrights in the 51 Episodes. (A1124; A1130 ¶ (I)(C)(1).)

(b)     Christian Jensen, a paralegal employed by SEI's attorneys, accessed the TVP Website using his computer in New York and recorded 36 of the 51 Episodes. (A1130-31 ¶ (I)(C)(2).)

(c)     Michael Barnett, one of SEI's attorneys, viewed certain TVP Polonia episodes through his computer in New York. However, the District Court found that Barnett "could not testify as to which specific episodes of the 51 he

17

viewed." (A1131 ¶ (I)(C)(2)(a).) Barnett captured screenshots for webpages of six of the fifteen episodes not recorded by the paralegal. (A1131 ¶ (I)(C)(2)(a)(ii).) However, the single screenshot exhibit cited by the District Court did not show whether video content was actually streamed. (A1597.)

(d)    Tomasz Gladkowski, an SEI employee in Canada, testified in deposition that he was able to access TVP content in Canada between December 2011 and March 2011. (A1131 ¶ (I)(C)(2)(b).) However, contrary to the finding below, Gladkowski did not testify that he had viewed any of the 51 Episodes. He testified at deposition that he had created a list of TVP programs he viewed, but also acknowledged that none of the 51 Episodes appeared on his list. (A2219-21/37:6-39:20; A2223/41:3-14.)

(e)    TVP volitionally removed territorial restrictions from 46 of the 51 Episodes by creating multiple formats for the episodes, one of which had the "Minus America" territorial restriction and the other of which did not. (A1134 ¶ (I)(D)(1).) The District Court concluded, solely from "the creation of multiple formats" for these programs, that "the infringement was intentional and willful," because a format could not be created accidentally. (A1135 ¶ (I)(D)(2)(c).)

(f)    TVP engineers later deleted the 46 non-geoblocked formats. (A1135 ¶ (I)(D)(2)(d)(i).)

18

(g)     In August 2012, after this lawsuit had commenced (that is, months after the March 1, 2012 date when SEI itself admitted that all of TVP's content was again geo-blocked to the United States (A371/90:7-8), and just prior to TVP taking screenshots of workflow logs for purposes of litigation, a TVP engineer manipulated the workflow logs with respect to three of the 51 Episodes, thereby altering the territorial restrictions and geo-blocking those three episodes. (A1136-37 ¶ (I)(D)(2)(e).)

(h)     There was no evidence that a failure in the TVP geo-blocking system caused the infringement.  (A1137 ¶ (D)(3).)

The District Court's legal conclusions were that:

(a)     SEI was the exclusive owner of all U.S. copyright over TVP Polonia programming in the U.S. and validly registered the 51 Episodes for copyright with the U.S. Copyright Office.  (A1140 ¶¶ (II)(B)(7).)

(b)     Because employees of SEI's law firm were able to stream and view the 51 Episodes by accessing TVP's Polish website, SEI's exclusive right to publicly perform those Episodes in the U.S. was infringed by TVP.  (A1141 ¶ (II)(C)(5).)

(c)     TVP volitionally and intentionally infringed SEI's U.S. copyrights by removing geo-blocking while in Poland.  (*Id*. ¶ (C)(7).)

19

(d)     TVP's infringement was not extraterritorial.  (*Id*. ¶ 5 n.3.)

(e)     TVP failed to establish its equitable estoppel defense because it took "intentional and volitional" action to infringe SEI's copyrights, and was therefore not ignorant of the true facts of the dispute.  (A1142 ¶ (D)(4).)

### C.     The District Court's Award of Damages

Following submission of supplemental briefing by the parties on statutory damages, the District Court issued a Memorandum Opinion ordering TVP to pay statutory damages of $60,000 for each of the 51 Episodes, for a total damages award of $3,060,000.  (A1253.)  The District Court held that TVP had willfully infringed SEI's copyrights (A1255), that it was irrelevant that SEI had not proved any actual loss or that TVP made any gain (*id*.), that SEI had no duty to mitigate its damages (*id*.), and that in determining the $60,000 per-work figure for statutory damages, the District Court had considered (a) TVP's "history of infringing Plaintiff's copyright," (b) TVP's willfulness and the need for deterrence, (c) TVP's supposed intentional manipulation of evidence for purposes of the litigation, and (d) the lack of information as to actual damages, which the court found was in part TVP's fault.  (A1256.)  It then directed entry of judgment in an ensuing Order. (A1257.)

TVP timely filed its notice of appeal from the opinions and judgment below on March 15, 2017.  (A1258.)

## SUMMARY OF ARGUMENT

I.     TVP did not directly infringe SEI's exclusive right of public performance of the 51 Episodes under the Copyright Act.  A defendant may be held liable for direct copyright infringement only if its alleged infringing conduct was volitional.  It is not infringement to establish an automated content delivery system that is not itself infringing, when the user of the system (not the defendant) selects the content to view, actuates the system, and employees of the defendant do not process the request.  Here, TVP lawfully uploaded its own content, in which it owned copyright, to its own automated VOD system.  The only volitional acts shown at trial were those of the employees of SEI's own law firm in New York, who sent commands to the VOD system, selected content, and received the resulting signal.  The proof cited by the District Court was therefore insufficient to prove volitional copyright infringement.  In addition, because the TVP VOD system was capable of substantial noninfringing uses – indeed, only a tiny percentage of all Polish speakers and potential users of the system live in the U.S. – it was not copyright infringement for TVP to make the system publicly available, even if U.S. users could theoretically use it for infringement.

II.     It is well-established law that the Copyright Act does not apply extraterritorially.  Acts committed abroad, even if they would be actionable if performed in the U.S., cannot form the basis for a U.S. copyright infringement suit.

21

The acts by TVP that the District Court found to be infringing were TVP's uploading of multiple formats of the 51 Episodes to the TVP VOD system, which the District Court erroneously found to remove geo-blocking for those episodes. However, the District Court acknowledged that all of TVP's acts occurred in Poland. Even if these acts would be a "performance" by TVP under U.S. copyright law if they were done in this country, they were extraterritorial, and it was error for the District Court to conclude that TVP was liable under the Copyright Act.

III.    The District Court erred in holding that TVP's conduct was willful infringement. Willfulness means more than just acts done on purpose; it requires that the plaintiff show that the defendant acted with knowledge that its conduct infringed another's copyright. There was no proof that TVP had such knowledge. The District Court also erred in finding that TVP infringed 15 of the 51 Episodes, those that SEI's attorneys were unable to record in the United States. None of SEI's witnesses were able to positively state that they had streamed and viewed any of these 15 episodes. If the Court does not reverse and dismiss the complaint outright, it should vacate the damages award and remand for a redetermination of damages free of these errors.

**STANDARD OF REVIEW**

The conclusions of law of a trial court following a bench trial are reviewed *de novo*. *Armstrong v. Geithner*, 608 F.3d 854, 857 (D.C. Cir. 2010). The trial

court's findings of fact are reviewed under the clearly erroneous standard. *Overby v. Nat'l Ass'n of Letter Carriers*, 595 F.3d 1290, 1293-94 (D.C. Cir. 2010). A trial court's award of damages is reviewed for abuse of discretion. *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1083 (D.C. Cir. 2012); *A.C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1039, 1041 (Fed. Cir. 1992). An abuse of discretion occurs when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact. *Lockheed Martin Corp. v. United States*, 833 F.3d 225, 234 (D.C. Cir. 2016).

## ARGUMENT

## I.   THE DISTRICT COURT ERRED IN HOLDING THAT TVP'S CONDUCT WAS COPYRIGHT INFRINGEMENT

The District Court concluded that TVP directly infringed SEI's U.S. copyrights in the 51 Episodes by uploading episodes of programs that were not geo-blocked for the U.S.[2] This was legal error in two respects. First, the court incorrectly applied the "volitional act" requirement of direct copyright

---

[2]   Point II of this section shows that even if TVP's uploading of non-geo-blocked TVP Polonia episodes to the VOD system would have infringed SEI's public performance right if the uploading had occurred in the United States, TVP's acts took place entirely in Poland. As a result, SEI has no valid infringement claim, since the Copyright Act does not apply to acts outside of the U.S. For purposes of the argument in Point I only, it is assumed that extraterritoriality would not bar SEI's claim.

infringement. The only relevant volitional acts shown at trial were those of the employees of SEI's own law firm, who accessed the TVP website in Poland and directed the VOD system to deliver content to their computers in the U.S. As a matter of law, these acts do not make TVP a direct infringer of SEI's copyrights.

Second, TVP cannot be held to have directly infringed because it maintained a VOD system with non-geo-blocked content. TVP is the creator and copyright owner of that content, and its system is therefore "capable of commercially significant noninfringing uses," as that concept was defined by the U.S. Supreme Court in *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984)(*Sony*). TVP cannot be liable for direct copyright infringement because the maintenance of non-geoblocked episodes on such a lawful automated VOD system is not itself infringing, even if persons in the U.S. may use the system to stream TVP Polonia content to their computers in the U.S.

## A.     TVP's Conduct Was Not Volitional

The District Court itself recognized that a defendant may not be held liable for direct infringement for conduct that was not volitional. (A1255.) Proof that a defendant's alleged infringing conduct was volitional is a clear requirement of any claim for direct infringement. *CoStar Grp., Inc. v. LoopNet, Inc.,* 373 F.3d 544, 555 (4th Cir. 2004) ("[W]e hold that the automatic copying, storage, and transmission of copyrighted materials, when instigated by others, does not render

24

an ISP strictly liable for copyright infringement under §§ 501 and 106 of the Copyright Act."); *Cartoon Network LP, LLLP v. CSC Holdings, Inc.,* 536 F.3d 121, 131 (2d Cir. 2008) ("[V]olitional conduct is an important element of direct liability"); *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007) (plaintiff does not state a claim of direct copyright infringement because plaintiff "failed to assert any volitional conduct").  "[T]he word 'volition' in this context does not really mean an 'act of willing or choosing' or an 'act of deciding.'" *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017).  Rather, it requires "actual infringing conduct" by the defendant.  *CoStar Grp.*, 373 F.3d at 550.

The volitional conduct requirement bars a finding of infringement where the defendant operates an automatic content delivery system that is not itself infringing, the user, not the defendant, selects the content it will view or receive and actuates the delivery system, and the user request is not processed by the defendant's employees.  *Fox Broad. Co. v. Dish Network LLC*, 723 F.3d 1067, 1074 (9th Cir. 2013) ("Operating a system...at the user's command does not mean that the system operator, rather than the user, caused the [infringement]"); *Parker*, 242 F. App'x at 837; *Fox Broad. Co. v. Dish Network LLC*, 160 F. Supp. 3d 1139, 1161 (C.D. Cal. 2015) (no volitional act by the defendant where "it is the user who initiates the process, selects the content, and receives the transmission.").

25

All factual elements here cut against a finding of volitional conduct by TVP. This case is crucially different from most direct copyright infringement lawsuits, where the defendant typically holds no rights to reproduce, perform, or distribute a copyrighted work.  Here, the District Court acknowledged that TVP created all the TVP Polonia program episodes at issue in this appeal and owns copyright in those episodes.  (A1123 ¶ (I)(A)(4).)  It also cannot be denied that TVP did not infringe any rights licensed to SEI by uploading its own programming content to its VOD system (whether in geo-blocked or non-geo-blocked format) or making the VOD system accessible to Internet users in Poland or Polish speakers outside the U.S. Moreover, as in the cases cited above, TVP's VOD system is fully automated, and user requests for content are not routed through a human operator.  Users, not TVP, select an episode and direct the automated system to deliver content for viewing.

The only volitional acts shown in the trial record were those of SEI's attorneys and employees.  They intentionally "initiate[d] the process, selecte[d] the content, and receive[d] the transmission" that formed the infringement claimed by SEI.  *Fox Broad.,* 160 F. Supp. 3d at 1161.  There is no evidence that anyone else in the U.S. attempted to access the TVP video content.  Assuming that the automated system obeyed SEI's commands and delivered the content requested by SEI, this is not a volitional act for which TVP bears direct copyright liability.

The District Court inferred that because SEI employees testified that they viewed TVP Polonia programs in the U.S., TVP employees must have volitionally acted to remove territorial restrictions from the 51 Episodes. (A1134.) However, the only evidence cited for this conclusion was that TVP created multiple formats for 46 of the 51 Episodes and uploaded these to its Workflow system, and that creation of a format is not accidental but volitional. (A1135.)

The conclusion was clearly erroneous. There was no evidence to show that the creation of multiple formats, one of which had a "Minus America" restriction, would permit U.S. users to stream TVP Polonia content. Indeed, all the evidence was to the contrary. The Workflow System records showed that every one of the 51 Episodes had at least one format with the "Minus America" designation (A2427-2589); the uncontradicted trial testimony was that as long as an episode had at least one format with the "Minus America" designation, it would be geo-blocked to the United States because that was the default existing in the CMS System (A626/345:24-25; A627/346:1-9). Moreover, the District Court's theory falls apart because most of the non-Minus America formats were not created until on or after March 1, 2012 (A2446-50; 2452-60; 2462-67), yet SEI's CEO testified that on March 1, 2012, "suddenly. . . the geo-blocking was back in place." (A371/90:7-8.). The District Court's theory that TVP infringed volitionally thus lacks substantial evidence to support it.

27

Even if the District Court's determination was not clear error, it was legal error. As noted above, the volitional act requirement is not satisfied by proof that a defendant did an intentional act; that act also must be an act of infringement. At most, the findings below establish that TVP (a) established a lawful automated VOD system, (b) uploaded its own content to that system, and (c) failed to geo-block that content for the U.S. None of these acts are infringing. The volitional acts that caused that content to be viewed in the U.S. were entirely those of SEI's law firm, and such facts cannot support a conclusion of direct infringement.

## B.     Under *Sony* and *Grokster*, TVP's Conduct Is Not Infringement

The District Court's conclusion that TVP was a direct infringer also cannot stand in light of *Sony*, 464 U.S. at 442, and *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) (*Grokster*). In *Sony*, the manufacturer of videotape recorders was sued for contributory infringement, because purchasers of the equipment used the machines to copy and replay copyrighted video content. The Supreme Court held that "the sale of copying equipment, like the sale of other articles of commerce, does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes. Indeed, it need merely be capable of substantial noninfringing uses." *Sony*, 464 U.S. at 442. Because the use of video recorders to copy a show and watch it later was a fair use, the equipment

28

was capable of substantial noninfringing uses, and *Sony* was held not to infringe. *Id.* at 456.

Similarly, the TVP VOD system is broadly capable of uses that do not infringe any rights of SEI.  38 million Polish speakers live in Poland.  Central Intelligence Agency, *The World Factbook, Poland*, https://www.cia.gov/library/publications/the-world-factbook/geos/pl.html (last accessed 8/5/2017).  Only about 600,000 Americans speak Polish at home.   U.S. Census Bureau,  *Language Use in the U.S. 2011*, https://www.census.gov/prod/2013pubs/acs-22.pdf, at 3 (last accessed 8/5/2017).  Thus, less than 2% of the potential users of the VOD system and its content live in the U.S.  TVP's VOD system and its content thus have not just substantial, but overwhelming non-infringing uses.

*Grokster*'s later refinement of the *Sony* holding further explains why TVP is not liable for infringement.  Grokster distributed free software that allowed sharing of audio and video files through peer-to-peer networks.  Copyright holders sued Grokster for contributory infringement, alleging that Grokster knowingly and intentionally distributed the software to enable users to themselves infringe the plaintiffs' copyrights in music and video works.  *Id.* at 918-921.  Grokster defended on the grounds successfully raised in *Sony* with regard to video recorders, arguing that its software had substantial non-infringing uses.  *Id.* at 933.

29

*Grokster* clarified *Sony*, holding that the creator of software or hardware (which the Court termed a "device") that can be used for substantial noninfringing purposes may be held secondarily liable for the infringing acts of the device's users, but only if the creator actively induces the users to employ the device for infringement. *Grokster*, 545 U.S. at 936-37 ("[O]ne who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties."). However, *Grokster* reaffirmed the central holding of *Sony*, stating that "in the absence of other evidence of intent, a court would be unable to find contributory infringement merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses." *Id.* at 939 n. 12. In his concurrence in *Grokster* (in which Justices Stevens and O'Connor joined), Justice Breyer noted that this principle would also bar a copyright owner from making a direct infringement claim against the creator of the device, because "the producer of a technology which *permits* unlawful copying does not himself *engage* in unlawful copying." *Id.* at 960 (emphasis in original).

The principles adopted in *Grokster* bar SEI's direct infringement claim against TVP. The facts below would not support a contributory infringement claim against TVP, because the TVP VOD system was capable of substantial non-

30

infringing uses.  The trial record showed no "clear expression or other affirmative steps taken [by TVP] to foster [United States] infringement" through use of the system, *Grokster*, 545 U.S. at 936-37, such as by advertising the availability of access in the U.S., placing notices on social media, or noting on the TVP Website that U.S. users could now stream TVP Polonia content to their computers. *Compare Grokster*, 545 U.S. at 937-39.  There was also no evidence that TVP was "aiming to satisfy a known source of demand for copyright infringement." *Compare Grokster*, 545 U.S. at 939.

It follows that TVP is not liable on the theory of direct infringement pursued by SEI.  Its VOD system, if not geo-blocked, would permit U.S. users to stream TVP Polonia content to their computers.  However, this would not make TVP a direct infringer of SEI's copyrights.  Just as "the producer of a technology which *permits* unlawful copying does not himself *engage* in unlawful copying," *Grokster*, 545 U.S. at 960, TVP's maintenance of a non-geo-blocked VOD system, not itself unlawful, that others could use for infringement does not permit the conclusion that TVP itself engaged in infringement.

The Court should therefore reverse the judgment below and direct that SEI's complaint be dismissed.

II.    **BECAUSE TVP'S ALLEGEDLY INFRINGING ACTS OCCURRED OUTSIDE OF THE UNITED STATES, SEI FAILED TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT**

Even if this Court concludes that TVP's removal of geo-blocking from content on its VOD system would have been a direct infringement of SEI's U.S. copyrights if that conduct had occurred in the U.S., the judgment below should be reversed. TVP's "infringing acts" occurred entirely in Poland, and under the well-settled extraterritoriality doctrine, such foreign acts do not permit a claim for infringement under the U.S. Copyright Act.

A.    **The Copyright Act Does Not Apply To Extraterritorial Infringement**

"The Copyright Act, it has been observed time and again, does not apply extraterritorially." *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1376 (2013) (Ginsburg, J., dissenting) (citing *United Dictionary Co. v. G. & C. Merriam Co.*, 208 U.S. 260, 264 (1908)). *See Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095-96 (9th Cir. 1994) (noting "over eighty years of consistent jurisprudence on the extraterritorial reach of the copyright laws"); *Update Art, Inc*. v. *Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988); *Robert Stigwood Grp. Ltd. v. O'Reilly*, 530 F.2d 1096, 1101 (2d Cir. 1976); *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 123 (D.D.C. 2011).

Under the extraterritoriality doctrine, acts committed abroad cannot form the basis for a U.S. copyright infringement suit, even if they would be actionable if done in the U.S. or if those acts may injure U.S. citizens. *Subafilms*, 24 F.3d at 1097.[3]  While infringing activity occurring abroad has been held actionable under the Copyright Act if the infringement is permitted or initiated by predicate acts of infringement within the United States, this exception does not apply unless *the defendant itself* commits a predicate act in the U.S.  *See, e.g., Luar Music Corp. v. Universal Music Grp., Inc.*, 861 F. Supp. 2d 30, 40 (D.P.R. 2012) (dismissing copyright claim because there was no predicate act in the U.S.).

### B.    The TVP Conduct Found By The District Court To Be Infringing Occurred Entirely Outside of the United States

The District Court acknowledged that TVP performed the acts found to be infringing – the creation of two video formats for the 51 Episodes, one of which lacked a "Minus America" restriction, and the uploading of those formats to the TVP VOD system – in Poland only.  (A114.)  The only acts occurring in the U.S. were those of SEI's attorneys, who testified that while in New York City they

---

[3]     There is an analytic dispute as to whether U.S. courts lack subject matter jurisdiction over extraterritorial acts of infringement, *see, e.g., Rundquist*, 798 F. Supp. 2d at 123, or whether a claim of extraterritorial infringement fails to state a cause of action under the Copyright Act.  *See, e.g., Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1367 (Fed. Cir. 2008).

intentionally accessed the TVP Website with their computers, selected certain programs for streaming, and viewed and recorded those programs.

The District Court erred in drawing the legal conclusion from these findings that TVP infringed SEI's public performance rights in the 51 Episodes in the U.S. under 17 U.S.C. § 106(4) (A1140-41), and that SEI's claim for infringement was not extraterritorial. (A1141.) This legal conclusion is fatally undermined by *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014) (*Aereo*).

In *Aereo*, the U.S. Supreme Court considered whether a technology company "perform[ed] the [defendant's] copyrighted work publicly," thereby infringing the public performance right of § 106(4). 134 S. Ct. at 2502. Aereo sold a service permitting subscribers to watch copyrighted over-the-air television programming on the Internet. Aereo maintained an array of small antennas at its facility, and a subscriber, using her Internet browser, could direct the Aereo system to tune in a particular channel, save the data in a subscriber-specific folder on Aereo's servers, and transmit the show to herself with a short lag from the time the show was actually broadcast over-the-air. *Id.* at 2503. A group of copyright owners sued Aereo (but not its subscribers) on the theory that Aereo directly infringed their copyright by "publicly performing" the copyrighted works. *Id.* at 2503-04.

34

A central question in *Aereo* was whether Aereo "performed" the copyrighted television programs.  Aereo denied that it performed the programs, arguing that only its "subscribers . . . 'perform' when they use Aereo's equipment to stream television programs to themselves."  *Id.* at 2504.  In answering the question, the Court looked initially to the definitions in the Copyright Act, 17 U.S.C. § 101: "to perform . . . a work 'publicly' means [among other things] to transmit. . . a performance . . . of the work . . . to the public," and that "to 'transmit' a performance" is "to communicate it by any device or process whereby images or sounds are received beyond the place from which they were sent."  *Id.* at 2504, 2506.  It then examined the legislative history of Congress's amendments of the Copyright Act, finding that Congress intended that a service "bearing an overwhelming likeness," *id.* at 2507, to a cable service, and that receives video signals from a copyright owner and retransmits them to the public would "publicly perform" the works even if it merely enhanced viewers' abilities to receive the signals.  *Id.*  The Court concluded that Aereo acted like a cable system and therefore performed the plaintiffs' works.

However, the Court also noted that in amending the Copyright Act, Congress recognized that a viewer would *separately* perform the work "whenever he or she . . .  communicates the performance [of a broadcaster] by turning on a receiving set."  *Id.* at 2506 (quoting H.R. Rep. No. 94-1476, p. 63 (1976)) ("H.R.

Rep."). *Aereo* noted that while in 1976, when the Copyright Act was amended, the television user's performance consisted of "turning on a receiving set," *id.* at 2506 (citing H.R. Rep. at 63), "today's 'turn of the knob' [is] a click on a website [which] activates machinery that intercepts [signals] and reroutes them to Aereo's subscribers over the Internet." *Id.* at 2507.

In this case, if TVP performed the 51 Episodes at all, it would have done so entirely in Poland, by uploading non-geo-blocked programs to its VOD system. The only performance of the 51 Episodes in the United States was that of SEI's own law firm, who "turned the knob": its employees opened their Internet browsers, directed them to the TVP Website, chose the content to view on their computers, directed the automated VOD machinery to send the content to their computers, and viewed the content. *See Fox Broad. Co*, 160 F. Supp. 3d at 1139. Because TVP's "infringing acts," as found by the District Court, occurred entirely outside of the United States, SEI failed to state a claim under the Copyright Act.

The opposite conclusion would represent a radical extraterritorial expansion of U.S. copyright law. There are many copyrighted works for which a U.S. entity holds exclusive U.S. rights, and unrelated entities hold exclusive rights in other countries. If the District Court were correct, the foreign rightsholders would be subject to a U.S. copyright infringement suit whenever they uploaded such works to their own Internet delivery systems, unless they always geo-blocked the works

36

against access by U.S. Internet users.  No court, until now, has held that U.S. copyright law imposes an obligation on the rest of the world to geo-block Internet access requests from the U.S.  *See Triple Up Ltd. v. Youku Tudou Inc*., No. 16-159, 2017 WL 354093, at *7 (D.D.C. Jan. 24, 2017) (rejecting claim of personal jurisdiction over Chinese equivalent of YouTube which did not geo-block plaintiffs' content, because it "would effectively mandate geo-blocking for any website operator seeking to avoid suit in the United States" and "could limit U.S. residents' access to what is appropriately called the *World* Wide Web.") (emphasis in original).

Reversing the judgment below, and holding that the extraterritoriality doctrine bars SEI's claim, will not threaten U.S. exclusive licensees of copyrighted works.  They may still protect their interests by requiring in their licenses that foreign rightsholders in that content must geo-block the content against access by U.S. Internet users.  Indeed, SEI has just a contractual right, but chose not to sue TVP for breach of contract.

The District Court gave paltry consideration to this dispositive issue of extraterritoriality.  The only authority it cited for its ruling was *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011 (N.D. Cal. 2015), which it said "held that copyright infringement that commenced abroad but was complete in the United States was not wholly extraterritorial, and thus the Copyright Act covered the defendant's

37

conduct." (A114/74:2-12; A1141 ¶ (II)(C)(5) n.3.) In reality, *Automattic* provided no support for the decision below, and could not be less relevant to this appeal.

Contrary to the District Court's statement, *Automattic* was not a copyright infringement "holding." It was a ruling in a case brought under an entirely different provision of law, 17 U.S.C. § 512. This section provides safe harbor from infringement liability for an Internet service provider (ISP) when a third party has posted copyright material on its website or servers, and the ISP complies with a takedown notice served by the owner of the material. However, if the party serving the notice misrepresents its ownership or the third party's right to post the work, 17 U.S.C. § 512(f) gives the third party the right to sue the notifying party for damages.

In *Automattic*, a California company sued a UK company who had sent a takedown notice for damages under § 512(f). The defendant defaulted, and the court granted the plaintiff's motion for a default judgment. It ruled that the § 512(f) claim would not require extraterritorial application of the Copyright Act, because § 512(f) focuses not on "where the fraudulent misrepresentation originated, [but] rather where the reliance, wrongful removal, and the resulting injury occurred." *Automattic*, 82 F. Supp. 3d at 1028. The court held that all of these elements of § 512(f) liability occurred in California, where the allegedly

infringing posted material was posted, and where the takedown notice was directed to. *Id*.

*Automattic* is wholly irrelevant here. This is an action for copyright infringement under § 501, not a damages claim under § 512(f). The latter statute applies to persons who post works online, not to copyright owners. And, in contrast to § 512(f), the extraterritoriality doctrine as applied to infringement suits does not consider where the plaintiff claims economic injury – it turns on where the defendants' allegedly infringing acts occurred.

Because TVP's alleged infringing acts occurred entirely in Poland, the District Court's ruling that TVP committed an infringement actionable in the United States was legal error. This Court should reverse the judgment below and direct dismissal of the complaint.

## III.    THE DISTRICT COURT'S DAMAGES DETERMINATION WAS AN ABUSE OF DISCRETION

In a post-trial ruling after additional briefing, the District Court concluded that TVP's infringement of the 51 Episodes was willful. It then assessed statutory damages of $60,000 per work infringed, for a total of $3,060,000 in statutory damages. Where a district court bases its calculation of statutory damages on an incorrect conclusion of law, it abuses its discretion and its damages judgment must be reversed and remanded for redetermination. *Walt Disney Co. v. Powell,* 897

39

F.2d 565, 570 (D.C. Cir. 1990).  Should the Court conclude that TVP is liable for copyright infringement, despite the showing made in Points I and II, the Court should nonetheless reverse the portions of the judgment finding that TVP's infringement was willful and that TVP infringed 15 of the 51 Episodes (those episodes for which there is no substantial evidence that they were actually viewed in the United States), and remand for a redetermination of damages that is free from these errors.

### A.    The District Court's Finding that TVP Committed Willful Infringement was Error.

TVP opted to recover statutory damages under 17 U.S.C. § 503(c), rather than actual damages under 17 U.S.C. § 504(b).  Statutory damages are awarded on a per-work basis regardless of the number of times the defendant is found to have infringed copyright in the work.  § 504(c)(1).  While the range of statutory damages to be awarded within the Court's discretion is from $750 to $30,000 per work, *id.*, where the plaintiff sustains the burden of proving and the court finds that "infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2).

In its opinion on liability, the District Court held that TVP's infringement was willful.  (A1134).  In its later opinion on damages, it reaffirmed this

conclusion without further reasoning, and assessed statutory damages of $60,000 for each of the 51 Episodes, for a total of $3,060,000 in statutory damages. (A1254-55.)  The District Court dismissed TVP's challenge to the willfulness finding (A1151-53) by the peremptory statement that it "will not consider" this argument.  (A1255.)

In concluding that TVP had willfully infringed SEI's copyrights, the District Court abused its discretion, erroneously equating its finding that TVP had acted volitionally to infringe with the legal standard for willfulness.  Willful infringement is not the same as intentional conduct that amounts to infringement. To prove willfulness, a plaintiff must not only show that the defendant knew that it was taking actions that were later ruled to be infringing, but also that the defendant *knew* these actions constituted *infringement of someone else's copyright.*  5 M. and D. Nimmer, Nimmer on Copyright § 14.04[B][3][a] ("[I]n other contexts, ['willfully'] might simply mean an intent to copy, without necessarily an intent to infringe.  [Under the statutory damages provision], though, 'willfully' means with knowledge that the defendant's conduct constitutes copyright infringement").  *See also Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 507-08 (1st Cir. 2011); *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 584 (6th Cir. 2007); *Nat'l Cable Television Ass'n, Inc. v. Broad. Music, Inc.*, 772 F. Supp. 614, 653 (D.D.C. 1991).

Proof of willfulness may exist where the defendant continues use of a work after it receives notice from the copyright owner that the use is infringing or after a copyright license terminates, *see, e.g.*, *Harrison Music Corp. v. Tesfaye*, 293 F. Supp. 2d 80, 84 (D.D.C. 2003); *Nat'l Cable Television Ass'n, Inc.*, 772 F. Supp. at 653; where the defendant removes the plaintiff's copyright notice before selling or disseminating copies of the work, *see, e.g., Wondie v. Mekuria*, 742 F. Supp. 2d 118, 124 (D.D.C. 2010); or where it knowingly sells counterfeited goods, *see, e.g., Walt Disney Co. v. Powell*, 698 F. Supp. 10, 12-13 (D.D.C. 1988), *aff'd in part, rev'd in part on other grounds*, 897 F.2d 565 (D.C. Cir. 1990).

SEI failed to carry its burden of proving that TVP knew it was infringing on U.S. copyrights owned by SEI. First, none of the contractual documents between SEI and TVP state that SEI would acquire a U.S. copyright or any other ownership interest in TVP Polonia programs, or authorized SEI to register copyright in those programs. The parties' 1994 Agreement (the original is in Polish) declared that TVP was "the producer and legal owner of the TV POLONIA signal." (A1263.) Even the parties' 2009 Settlement Agreement, drafted after SEI asserted a claim of copyright infringement against TVP, did not acknowledge that SEI owned U.S. copyright in TVP Polonia programs.[4] (*See* A1342-45.)

---

[4]     SEI dismissed its 2006 complaint against TVP with prejudice and there was never a judicial determination of whether any removal of geo-blocking by TVP

Second, the trial record does not show that TVP received any of the kinds of notice or possessed the kinds of knowledge that have permitted a finding of willfulness in other cases.  SEI deliberately chose not to notify TVP that suspension of geo-blocking was an infringement of SEI's U.S. copyrights from December 2011 until it sued in June 2012 – more than three months after SEI acknowledged that geo-blocking had been fully restored.  The copyright notices on the 51 Episodes properly showed TVP as the copyright owner because TVP created the programs and owned copyright in them.  (A1123.)  And, of course, the 51 Episodes were original TVP Polonia programs produced by TVP itself, not some pirated copy or counterfeit.  Moreover, Jacek Terlicki, the Deputy Director for Computer Technology in the TVP Technology Department, testified that he knew nothing about the U.S. copyright system, including pre-registration with the U.S. Copyright Office, (A796-97/515:20-516:16), and the District Court did not find that this testimony lacked credibility.

None of the District Court's findings support its conclusion of willfulness.  The District Court rested its conclusion that TVP acted "willfully and intentionally to infringe SEI's copyright," (A1134 ¶ (I)(D)(2)), entirely on the fact that TVP had created non-geo-blocked formats for the 51 Episodes, and that "creating a format is

_____

would be an infringement of SEI's U.S. copyright.  *See supra*, Statement of the Case and the Facts, at III.B.

an intentional act, and there was no evidence that a format could be created accidentally." (A1135 ¶ (I)(D)(2)(c); *see also* A1138 ¶ (I)(E)(1).)  This mistakenly conflated what the court below regarded as a volitional act constituting infringement with willfulness, which, as shown above, requires much more: proof that the defendant knew its acts infringed another's U.S. copyright and acted in defiance of that knowledge.

Accordingly, the District Court's conclusion that TVP acted willfully was an abuse of discretion and should be reversed.  The award of statutory damages was predicated on this erroneous finding of willfulness, and an award of $60,000 per infringed work exceeds the amount permitted by law for non-willful infringement, *see* 17 U.S.C. § 504(c)(1) (range for non-willful infringement is $750-30,000 per work).  The Court should therefore vacate the damages award below and remand for a redetermination of damages.

### B.     The District Court Erred in Finding That 15 of the 51 Episodes were Infringed.

The District Court clearly erred in finding that 15 of the 51 Episodes were streamed by SEI's attorneys in the U.S.[5]  Factual findings are clearly erroneous under Fed. R. Civ. P. 52(a) when they are unsupported by substantial evidence, lack adequate evidentiary support, or are against the clear weight of the evidence.

---

[5]     The 15 Episodes are *Galeria*, episodes 15-25, *M jak Milosc*, episode 895, and *Rezydencja*, episodes 57-58.  (A1714; A1574 in "Other Recordings" folder.)

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 571 (2d Cir. 1991); *Lame v. United States Dep't of Justice*, 767 F.2d 66, 70 (3d Cir. 1985). Here, there was *no* affirmative evidence from which a factfinder could have reasonably concluded that the 15 Episodes were streamed by SEI's attorneys on a United States computer.  Since this erroneous finding forms the only basis of the District Court's conclusion that copyright in the 15 Episodes was infringed by TVP and its award of damages for infringement of the 15 Episodes, the Court should reverse the judgment and vacate the award of damages as to those 15 Episodes.

SEI admitted at trial that its law firm's employees did not record 15 of the 51 Episodes in the United States, and that the deposit copies of the 15 Episodes filed with the Copyright Office were recorded by SEI employees in Poland. (A557/276:11-14.)  The District Court nevertheless found that "[Michael] Barnett's, [Tomasz] Gladkowski's, and Jensen's testimony established by a preponderance of the evidence that all 51 registered episodes were in fact available and viewed on the TVP website for free, and Plaintiffs' rights in all 51 were therefore infringed."  (A1133 ¶ (C)(4)(d).)  The trial evidence provides *no support* for this conclusion.

Michael Barnett, an associate of SEI's law firm, did not testify that he viewed any of the 15 Episodes in the United States.  Indeed, he said that he did not recall the specific episodes or episode numbers of any TVP Polonia programs

45

series that he watched.  (A479/198:3-5; A479/198:14-16; A480/199:4-13.)  When

asked which of the 51 Episodes he personally watched, he testified that "It's

possible that for some of them, again just following the pattern when they came on

the site as being freely available, I doubt – if that was February 1, I would mark

that down in the spread sheet.  Do I have a specific recollection sitting here that I

watched each of the 51 episodes?  No."  (A481/200:15-19.)  He was then asked by

the District Court: "For each [of the 51 episodes] here, did you click on and see

that they were available?" to which he replied, "I can't recall specific episodes.  I

certainly did that for some of them, Your Honor, but I'm not going to sit here and

say for each of the 51, I definitely did that."  (A481-82/200:24–201:2.) There was

no evidence that all TVP Polonia episodes could be viewed by the SEI witnesses.[6]

Nor was there any documentary evidence to support the District Court's

conclusion of infringement of the 15 Episodes.  Barnett testified that he and

Christian Jensen maintained a spreadsheet "to track the TVP Polonia works that we

were preregistering and then registering with the copyright office."  (A457/176:4-

10.)  One column of the spreadsheet, labeled "Date of First Infringement," was

created by Barnett, who "went to the TVP website and saw when each of these

episodes was first available for streaming in the United States, or rather my

---

[6]    To the contrary, Barnett and Gladkowski testified that some episodes they
attempted to view through the VOD system were blocked.  (A1132 ¶ I(C)(3)(d).)

computer in New York." (A460-61/179:20-180:9.) On cross-examination, Barnett acknowledged that he entered a date for each episode before the date actually arrived, based entirely on his assumption that the episode would later become available on TVP's VOD system, and not because he actually accessed and watched that episode. (*Id*.) In addition, while screenshots of the TVP Website were introduced into evidence, Barnett admitted that these only captured the text portion of webpages, did not record what could be played on a computer in the U.S., and did not even show whether any video content was playable. (A487/206:4-14; A488/207:5-10.)

The remaining evidence also provided no support for the District Court's conclusion that the 15 Episodes were streamed in the United States. Jensen did not view any of the 15 Episodes in the United States. (A1132 ¶ (I)(C)(4)(a).) Tomasz Gladkowski, an SEI employee located in Toronto, said that he checked the TVP website from December 2011 until March 2012 while in Toronto and that he could see "content." (A2204/22:9-21.) However, he also testified that while he was able to access and stream some TVP Polonia episodes, streaming of other episodes was blocked. (A2197/15:3-7.) While Gladkowski logged episodes of TVP Polonia content he had seen, none of the 51 Episodes were entered in his logs, and the last dated entry in his logs of content was before the "first date of infringement" for the

first of the 51 Episodes entered in the spreadsheet maintained by SEI's lawyers. (A2220-21/38:7-39:20.)

This testimony and documents were insufficient, as a matter of law, to establish that there were infringing public performances of the 15 Episodes in the United States. A copyright infringement plaintiff may use the testimony of an eyewitness investigator to prove that an infringing public performance took place. However, to be probative, the eyewitness's testimony or report must positively state, on the basis of her or his own personal observation, that a specific copyrighted work was publicly performed. *See, e.g.*, *Mob Music Publ'g v. Zanzibar on the Waterfront, LLC*, 698 F. Supp. 2d 197, 205-06 (D.D.C. 2010) (ASCAP investigators filed affidavits positively identifying by name six musical compositions that were performed live at defendant's restaurant); *Broad. Music, Inc. v. Airhead Corp.*, No. 3:90CV00431, 1990 WL 1239531, at *1 (E.D. Va. Dec. 27, 1990) (investigator testified that while at defendant's restaurant, he heard a performer play eleven songs from BMI's repertoire, whose names he identified from personal knowledge); *Range Roads Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1151-53 (9th Cir. 2012) (affirming grant of summary judgment to plaintiff based on investigator's report and declaration that identified specific songs he heard played in defendant's establishment).

48

SEI presented no such probative evidence of public performance for the 15 Episodes, so the District Court's conclusion of infringement of the 15 Episodes cannot stand.  This Court should therefore reverse the judgment, vacate the damages award and dismiss SEI's infringement claim as to these 15 Episodes.

**C.  The Court Should Remand With Instructions to Consider SEI's Failure to Mitigate Damages and the Absence of Any Actual Harm to SEI or Profit to TVP**

If the Court remands on the issue of damages, it should also provide guidance to the District Court on redetermining damages so that a second appeal on damages will not be necessary.  In particular, it should instruct the District Court that in awarding any damages, it must consider SEI's deliberate failure to mitigate its damages and the absence of any loss to SEI, or gain to TVP, from the infringement, and that it should not consider the earlier litigation between TVP and SEI, as it is not evidence of a history of copyright infringement.

1.  <u>Mitigation of Damages</u>

A plaintiff in tort has a duty of mitigation, which "requires a party to take reasonable steps after it has been injured to prevent further damage from occurring."  *Adenariwo v. Fed. Mar. Comm'n*, 808 F.3d 74, 80 (D.C. Cir. 2015). A copyright plaintiff has a duty to mitigate statutory damages.  Courts have "broad discretion in determining how to award statutory damages and may consider actual damages as a factor in making that determination, [accordingly,] a failure to

49

mitigate damages may remain relevant, particularly because one purpose of statutory damages is to approximate actual damages that are difficult to prove." *Malibu Media, LLC v. Doe*, No. 13-cv-135-RLM-JEM, 2014 WL 1031336, at *2 (N.D. Ind. Mar. 17, 2014); *see also Malibu Media, LLC v. Julien*, No. 12-cv-01730-TWP-MJD, 2013 WL 5274262, at *2 (S.D. Ind. Sept. 17, 2013). The duty to mitigate requires the plaintiff to notify the defendant that ongoing copyright infringement is occurring, rather than sit back and let infringements and statutory damages claims accumulate. *Malibu Media, LLC v. Guastaferro*, No. 14-cv-1544, 2015 WL 4603065, at *5 (E.D. Va. July 28, 2015) ("[A] plaintiff's knowing failure to stop ongoing copyright infringement may represent a failure to mitigate.").[7]

SEI deliberately failed to mitigate its damages, and the Court should direct the District Court to not award any damages that SEI could have reasonably mitigated. SEI knew by early December 2011 that some TVP Polonia programs could be accessed from North America from the TVP VOD system. (A348/67:13-19.) SEI did not know if this was deliberate or an accidental failure of TVP's geo-blocking system. (A370/89:21-15; A371/90:1-11.) Boguslaw Spanski, SEI's CEO, testified that nonetheless he deliberately chose not to notify TVP that TVP

---

[7]    Some of these authorities were cited to the District Court in TVP's supplemental briefing on damages (A1153), which makes the District Court's later statement that "TVP provides no precedent, nor is the court aware of any, suggesting that TVP has any obligation to 'mitigate' statutory damages" (A1255) inexplicable.

Polonia episodes could be accessed in the United States from the VOD system. (A354/73:16-18.)  These facts permit only one conclusion: SEI intentionally kept silent in order to accumulate "infringements" by TVP and to make a massive statutory damages claim in this action.  This establishes that SEI deliberately ignored its duty to mitigate damages.  Had SEI timely notified TVP of the absence of geo-blocking, TVP would have examined and corrected the situation, none of the 51 Episodes would have been made available to U.S. users, and SEI would have no claim against TVP.  (A777/497:7-25; A778/498:1-25; A779/499:1-8.) Moreover, such notification would have been cost-free to SEI.  SEI should not be permitted to recover damages it could have easily avoided.

If the Court remands the issue of statutory damages to the District Court, it should instruct that Court to decline to award any statutory damages to SEI that could have been prevented by SEI giving reasonable, timely notice of its claim to TVP.

2.    Relationship Between Actual Damages and Statutory Damages

In determining the amount of statutory damages to be awarded to a prevailing infringement plaintiff, courts consider such factors as "(1) expenses saved and profits reaped by the infringing party, (2) revenues lost by the copyright holder, and (3) whether the infringing party acted willfully." *Lifted Research Grp., Inc. v. Behdad*, No. 08-390 (CKK), 2010 WL 2662277, at *5 (D.D.C. June 30,

2010).  However, where the plaintiff cannot show that it suffered any actual

damages, the per-work statutory damages award should not be high, because

assessed "statutory damages should bear some relationship to the actual damages

suffered."  *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 568-69

(S.D.N.Y. 1995) (Sotomayor, U.S.D.J.); *see also Quinto v. Legal Times of Wash.,

Inc.*, 511 F. Supp. 579, 582 (D.D.C. 1981).  The deterrent aspect of statutory

damages does not justify awarding a plaintiff a windfall that bears no relationship

to its actual damages.  *Microsoft Corp. v. Ricketts*, No. C 0606712, 2007 WL

1520965, at *4 (N.D. Cal. May 24, 2007); *Peer Int'l Corp.*, 887 F. Supp. at 569.

SEI acknowledged that it could not show any monetary loss it suffered from

the alleged infringement or that it had lost any subscribers as a result.

(A383/102:4-13.)  Its CEO acknowledged that the company remained profitable

throughout and after the infringement period.  (A385/104:9-10.)  Congress has

provided statutory damages in copyright "to give the owner of a copyright some

recompense for injury done him, in a case where the rules of law render difficult or

impossible proof of damages or discovery of profits."  *Sony BMG Music Entm't*,

660 F.3d at 502 (citing *Douglas v. Cunningham*, 294 U.S. 207, 209 (1935)).  But

that is not this case.  SEI failed to show that it suffered *any* identifiable loss from

the three-month period when geo-blocking was suspended, or that its licensed

rights from TVP were impaired in any way.  Likewise, there was no evidence that

52

TVP received any revenue from U.S. users during the period of infringement found by the Court or that it saved any expense as an infringer would who used copyrighted goods without paying an established licensing fee.[8]

There are no other factors here that would permit the District Court to award statutory damages near the top of the range for non-willful infringement.  As noted above, TVP did not act willfully.  Although the District Court noted authority holding that a defendant's "history of copyright infringement" could also be taken into consideration (A1254), it clearly erred in finding that TVP had such a history.  (A1255.)  In the 2006 litigation where SEI alleged copyright infringement, no court ruled that TVP had infringed.  Instead, the parties entered into their 2009 Settlement Agreement (which made no mention of copyright) and SEI dismissed its lawsuit with prejudice.  (A1342-45.)

---

[8]     The District Court also abused its discretion in refusing to consider relevant evidence offered by TVP (A1154-55), that would have shown the low contract value of TVP Polonia episodes.  (A1255.)  In the 2010 litigation between TVP and SEI, TVP was found to have licensed some of the TVP Polonia programming in which SEI had rights to a third party in breach of its contractual allegations to SEI.  The trial court awarded SEI damages of $600 per episode, which the Second Circuit affirmed, holding that this per-episode amount "was the market value of the syndication rights that TVP improperly licensed to Polvision" and was "an appropriate measure of damages."  *Spanski Enters., Inc. v. Telewizja Polska S.A.*, 604 F. App'x 33, 38 (2d Cir. 2015).  The lack of relation between the District Court's statutory damages award and actual damages is shown by fact that the District Court awarded SEI $60,000 per each of the 51 Episodes, *one hundred times* the previously-determined market value of each episode, without any evidence that SEI had suffered a penny of actual losses.

Finally, the District Court held that it could impose statutory damages because it found that TVP had manipulated evidence in the litigation. While TVP disputes this finding, no authority holds that statutory damages may be imposed or increased as a sanction for a defendant's alleged discovery misconduct in copyright litigation. *Warner Bros. v. Dae Rim Trading, Inc.*, 877 F.2d 1120 (2d Cir. 1989), cited by the District Court (A1254), held only that a court could *reduce* the amount of statutory damages where the *plaintiff* conducted its infringement suit in a vexatious, oppressive and unreasonable manner. *Id.* at 1126.

## CONCLUSION

For the reasons set forth above, the Court should reverse the judgment of the District Court and direct dismissal of the complaint. Alternatively, the Court should reverse the judgment and dismiss so much of the complaint as alleged that TVP infringed copyright in 15 of the 51 Episodes. As to the remaining 36 Episodes, the Court should (a) vacate the damages award, (b) determine that any infringement by TVP was non-willful, and (c) remand to the District Court for a redetermination of statutory damages, with instructions to the District Court as set forth in Point III, *supra*.

Dated: August 7, 2017

Respectfully submitted.

54

/s/ Mary E. Gately
MARY E. GATELY
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, D.C. 20004
(202) 799-4000
mary.gately@dlapiper.com

**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32**

I, Mary E. Gately, a member of DLA Piper LLP (US), counsel for Appellant Telewizja Polska S.A., hereby certify that the foregoing main brief complies with the requirements of F.R.A.P. 32(a)(7) and contains 12,403 words and 1,034 lines including footnotes according to the word count of the word processing system used to prepare it.

/s/ Mary E. Gately
Mary E. Gately

## United States Court of Appeals
## for the District of Columbia Circuit

*Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, No. 17-7051

## CERTIFICATE OF SERVICE

I, Melissa Pickett, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by DLA PIPER US LLP, Attorneys for Appellant to print this document.  I am an employee of Counsel Press.

On **August 7, 2017,** counsel has authorized me to electronically file the foregoing **Brief for Defendant-Appellant** with the Clerk of Court using the CM/ECF System, which will serve, via e-mail notice of such filing, to any of the following counsel registered as CM/ECF users:

> JONATHAN ZAVIN
> LOEB & LOEB LLP
> Attorneys for Plaintiff-Appellee
> *345 Park Avenue*
> *New York, New York 10154*
> (212) 407-4000

A courtesy copy has also been mailed to the above listed counsel.

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via Express Mail.

August 7, 2017                                                        /s/ Melissa Pickett
                                                                           Melissa Pickett
                                                                           Counsel Press